# KURKOWSKI LAW, LLC
*By: Daniel M. Kurkowski, Esquire (020822006)*
1252 Route 109 S.
Cape May, New Jersey 08204
(609) 884-1788; Fax (609) 884-1163
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN, NEW JERSEY

| | |
|---|---|
| QIANA CARTER<br><br>*Plaintiff,*<br><br>v.<br><br>SHELTER HAVEN HOSPITALITY, INC. d/b/a THE REEDS AT SHELTER HAVEN; JOHN DOE ENTITIES (Pl. 1-5) AND INDIVIDUALS (Pl. 1-5),<br><br>*Defendants.* | CASE NO.:<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT

Plaintiff, Qiana Carter, residing on Cottonwood Drive, Cape May Court House, New Jersey 08210, by way of Complaint as against the Defendants, states the following:

## PARTIES

1. Plaintiff, Qiana Carter (hereinafter "Plaintiff"), is an individual and citizen of the County of Cape May County and the State of New Jersey.

2. Defendant, Shelter Haven Hospitality, Inc. d/b/a The Reeds at Shelter Haven (hereinafter "Defendant"), is a commercial hotel in the County of Cape May County and the State of New Jersey.

3. Defendant, John Doe Entities (Pl. 1-5) and Individuals (Pl. 1-5), are unknown to Plaintiff

1

at this time and Plaintiff seeks to preserve her rights to amend the Complaint pursuant to the John Doe Rule if additional names of individuals or other business entities become known.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter because Plaintiff is asserting a violation of their rights under 29 U.S.C. §2601 et seq.

5. This Court also has supplemental subject matter jurisdiction over the state law claims pled in this Complaint. 10 N.J.S.A. §5-12 et seq.

6. Venue is appropriate in this judicial district as a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district; and Defendants maintain their principal place of business in this judicial district and have sufficient contacts in this jurisdiction to be subject to personal jurisdiction herein. 28 U.S.C. §1391(b).

## INTRODUCTION

7. This Complaint is brought against Defendant for interference and retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 et seq. (hereinafter "FMLA"); and discrimination on the basis of pregnancy and failure to provide reasonable accommodations in violation of the New Jersey Law Against Discrimination, 10 N.J.S.A. §5-12 et seq. (hereinafter "NJLAD").

## FACTS RELEVANT TO ALL COUNTS

8. Plaintiff was hired by Defendant in or about June 2020 as a housekeeper.

9. Very unfortunately, Plaintiff suffers from epilepsy, which causes her to experience severe seizures. Plaintiff made Defendant aware of her condition upon hire.

10. Plaintiff was always a dedicated, reliable and excellent employee for Defendant, without any disciplinary issues whatsoever.

11. Plaintiff became pregnant in or about December 2020 and notified Defendant's housekeeping manager shortly thereafter.

12. In or about June 2021, Plaintiff spoke with her OB/GYN and was told that her pregnancy was considered a high-risk pregnancy due to her suffering epilepsy and that she would need to take medical leave in the foreseeable future.

13. On or about July 27, 2021, Plaintiff spoke with Defendant's Human Resources Manager Donna Shields, and inquired about starting maternity leave in the upcoming days.

14. Plaintiff informed Ms. Shields that she was considered a high-risk pregnancy due to her having epilepsy and may need medical leave depending on her OB/GYN's medical opinion at her upcoming.

15. Defendant informed Plaintiff that she was eligible for FMLA, and provided FMLA the paperwork on or about July 28, 2021. However, Defendant did not provide Plaintiff with all required notices under the FMLA, constituting an interference with Plaintiff's FMLA rights.

16. Plaintiff attended an appointment on or about July 30, 2021 at Cape OB/GYN Associates and received a physician's note that day, putting her out on maternity leave beginning the following day, on or about July 31, 2021.

17. Plaintiff was approved for FMLA leave.

18. Throughout Plaintiff's maternity leave, she provided updated physician's notes to Defendant approximately every six weeks, per Defendant's request. Plaintiff also informed Defendant that her approximate due date was September 12, 2021.

19. Very fortunately, Plaintiff gave birth to a healthy baby girl on or about September 8, 2021.

20. On or about October 29, 2021, Plaintiff returned to her OB/GYN for a postpartum check-up. Plaintiff received medical clearance to return to work without any restrictions the following

day, October 30, 2021.

21. On or about October 29, 2021, Plaintiff then called Defendant and notified them of her return-to-work date. Plaintiff also indicated that she had the physician's note returning her to work in a full duty capacity, without restriction and she was ready, able, and willing to work.

22. Very unfortunately, on or about October 29, 2021, Defendant terminated Plaintiff and would not allow her to return to work or be reinstated into her former position.

23. Plaintiff was terminated at the conclusion of her maternity leave and was never given the opportunity to return to her previous position or one that is similarly situated. By doing so, Defendant retaliated against Plaintiff in violation of the FMLA, interfered with her FMLA rights, failed to reasonably accommodate Plaintiff in violation of the NJLAD and discriminated against Plaintiff on the basis of her pregnancy in violation of the NJLAD.

24. On or about November 8, 2021, Plaintiff received a letter stating that her termination date was changed from October 29, 2021 to October 30, 2021. Plaintiff avers that her correct termination date is October 29, 2021, and that she would have returned to work on or about October 30, 2021, if not for her unlawful termination.

25. Plaintiff avers that she had never, at any time, received any form of write-up or progressive disciplinary action.

26. Plaintiff was a faithful and devoted employee of Defendant's, having worked six days per week and up until she was approximately seven and-a-half months pregnant.

27. Plaintiff was wrongfully terminated at the conclusion of her maternity leave, leaving her without any source of income to provide for herself and her newborn baby.

28. Plaintiff avers that Defendant discriminated against her on the basis of her pregnancy, failed to reasonably accommodate her maternity leave, interfered with her right to exercise FMLA

leave, and retaliated against her for exercising her right to such leave.

## COUNT ONE (Interference & Retaliation in Violation of the FMLA)

29. This Count One is brought against Shelter Haven Hospitality Inc. d/b/a The Reeds at Shelter Haven, and John Doe Business Entities (Pl. 1-5) and John Doe Individuals (Pl. 1-5), jointly, severally, or in the alternative, for interference and retaliation under the Family and Medical Leave Act of 1993 (hereinafter referred to as FMLA), codified at 29 U.S.C. § 2601 *et seq.* and its correlating regulations at 29 C.F.R. 825 *et seq.*

30. Plaintiff went out on a pre-approved maternity leave on or about July 31, 2021.

31. Plaintiff received clearance to return to work without any restrictions on or about October 29, 2021, with a tentative date of October 30, 2021.

32. Plaintiff was approved to return to work on October 30, 2021, and notified Defendant of such date on October 29, 2021.

33. Plaintiff was terminated on or about October 29, 2021, the day before she would have returned to work, constituting retaliation under the FMLA.

34. Plaintiff was also terminated upon the end of her FMLA leave and was not allowed to return to work in an equivocal position, constituting an interference and retaliation with the FMLA.

35. By failing to provide required notice(s) under the FMLA, Defendant violated the FMLA, constituting an interference with Plaintiff's FMLA rights.

36. Defendant interfered with Plaintiff's right to exercise FMLA leave and retaliated against Plaintiff for taking such leave by firing her before she returned to work.

37. As a proximate and direct result, Plaintiff's rights were offended and violated under the FMLA for interference and retaliation causing Plaintiff to suffer substantial economic loss; loss of income and other pecuniary harm; diminished career opportunity; harm to her

business reputation; disruption to her family life; loss of self-esteem; emotional trauma and distress; physical injuries and manifestations, and other harm, pain and suffering.

38. **WHEREFORE**, Plaintiff brings this Count as against Defendants and John Doe Entities (Pl. 1-5 and John Doe Individuals (Pl. 1-5), jointly, severally and in the alternative for violations of the FMLA, and seeks that this Court enter a judgement declaring that the acts and practices complained of herein are in violation of the FMLA and directing Defendants to pay:

a. compensatory damages,

b. front and back pay,

c. emotional distress damages,

d. interests,

e. lost benefits (if any),

f. punitive damages,

g. reasonable attorney's fees and costs,

h. liquidated damages prescribed under the FMLA,

i. and granting all other such relief that a judge or a jury may deem just and appropriate.

### COUNT TWO (Pregnancy Discrimination and Failure to Provide Reasonable Accommodations in Violation of the NJLAD)

39. Plaintiff repeats the allegations contained in the preceding Facts section and incorporates them in this Count Two as though they were fully set forth at length herein.

40. Plaintiff became pregnant in or about December 2020, and informed Defendant of such.

41. Plaintiff went on maternity leave on or about July 31, 2021, and was terminated on or about October 29, 2021, the day before she was medically cleared to return to work.

42. Defendant failed to reasonably accommodate Plaintiff's maternity leave in violation of the

6

NJLAD.

43. Defendant discriminated against Plaintiff due to her pregnancy in violation of the NJLAD.

44. Defendant engaged in discrimination against Plaintiff, on the basis of her pregnancy status and/or maternity leave, by way of the above acts.

45. It is an unlawful employment practice for an employer, because of pregnancy, to refuse to employ, refuse to hire, or to bar from employment an individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment.

46. An employer must make reasonable accommodations to the limitations of pregnant employees unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. An employer is required to consider the possibility of reasonable accommodations prior to making an adverse employment decision based on a finding that individual's pregnancy precludes job performance. Depending upon the circumstances, reasonable accommodation may include making facilities are readily accessible and usable for the pregnant individuals, job restructuring, including part time or modified work schedules, acquisition or modification of equipment or devices, and/or job reassignments. Whether an employer has made a reasonable accommodation is determined on a case-by-case basis.

47. As direct and proximate result, Plaintiff's rights were offended under the NJLAD causing Plaintiff to suffer substantial economic loss; loss of income and other pecuniary harm; diminished career opportunity; harm to her business reputation; disruption to her family life; loss of self-esteem; physical injury; emotional trauma and distress; and other harm, pain and suffering.

48. **WHEREFORE**, Plaintiff brings this Count as against Defendant and John Doe Entities (Pl.

1-5) and John Doe Individuals (Pl. 1-5), jointly, severally and in the alternative for violations of the NJLAD for discrimination on the basis of a disability and for failure to reasonably accommodate a disability, and seeks that this Court enter a judgement declaring that the acts and practices complained of herein are in violation of the NJLAD and directing Defendants to pay:

a. compensatory damages,

b. front and back pay,

c. emotional distress damages,

d. interests,

e. lost benefits (if any),

f. punitive damages,

g. reasonable attorney's fees and costs,

h. and granting all other such relief that a judge or a jury may deem just and appropriate.

KURKOWSKI LAW, LLC

<i>/s/      Daniel Kurkowski</i><br>Daniel M. Kurkowski, Esq.<br>Attorneys for Plaintiff

Dated: December 7, 2021

## CERTIFICATION

I hereby certify that there are no other actions to my knowledge pending in any Court concerning the subject matter of the Complaint contained herein. I further certify that there are no other parties to my knowledge who should be joined in this action at this time.

Nothing contained in this Complaint shall be construed or deemed an admission, of any kind, against Plaintiff. This is not a verified complaint and is a document prepared by counsel.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

KURKOWSKI LAW, LLC


*/s/       Daniel Kurkowski*
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: December 7, 2021

### DEMAND FOR JURY TRIAL

Plaintiff Demands trial by jury on all of the triable issues of this complaint, pursuant to Rule 38(b)(1).

### NOTICE OF TRIAL COUNSEL

PLEASE TAKE NOTICE that Daniel M. Kurkowski, Esq. is hereby designated as Trial counsel in the above captioned litigation on behalf of Kurkowski Law, LLC, attorneys for Plaintiff.

KURKOWSKI LAW, LLC


*/s/       Daniel Kurkowski*
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: December 7, 2021

### DEMAND TO PRESERVE EVIDENCE

1. All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, to any defenses to the same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheet, employment files, memos, text messages and any and all online social or work related websites, entries on

social networking sites (including, but not limited to, Facebook, Twitter, Instagram, Snapchat etc.) and any other information and /or data and/or things and/or documents, including specifically but not limited to the time cards, time sheets, and/or log books and all payroll records (both physical documents and electronic documents and/or data), which may be relevant to any claim or defense in this litigation.

2. Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

KURKOWSKI LAW, LLC

*/s/       Daniel Kurkowski*
Daniel M. Kurkowski, Esq.
Attorneys for Plaintiff

Dated: December 7, 2021